# SECOND DISTRICT, 1894.

---

MRS. ELLA EVANS v. W. J. BENTLEY ET AL.

No. 1427.

Superior Title—Rescission and Specific Performance—Vendor's Lien.—E. conveyed land to J. J. B., wife of W. J. B., taking the note of W. J. B. alone for a deferred payment, with lien retained in the deed to secure it.  The cash payment of $500 was made with funds the separate property of Mrs. B.  Subsequently E. brought suit on the note against W. J. B. alone, and under a foreclosure of the vendor's lien bought in the property for the judgment debt; and it having, after that, greatly enhanced in value, he resold it to other parties at an advanced price.  *Held*:

1.  That E. did not waive or become divested of the superior legal title which he reserved in the deed by his ineffectual attempt to foreclose the vendor's lien without making Mrs. B. a party to the action.

2.  Mrs. B. having failed for a series of years, during a decline in the value of the property (vacant town lots), to pay the balance due by the note, or to keep the taxes paid up, E. had a right to rescind the executory contract of sale evidenced by his deed to her, and she was not equitably entitled (in the nature of a specific performance of such contract) to recover the lots of E.'s vendees, nor to recover of E. (or his legal representative made a party to this suit) such proportionate part of the advanced price received by E. on the second sale as her payment of $500 bore to the total price at which the lots were sold to her, but only to recover back her said payment, with interest.

ERROR from Tarrant.    Tried below before Hon. S. P. GREENE.

*A. M. Carter,* for plaintiff in error.—1.  B. C. Evans, by instituting his suit against W. J. Bentley, and obtaining a judgment in said cause against W. J. Bentley only, and a decree foreclosing his lien upon said property as against W. J. Bentley only, and an order of sale of said premises thereunder, and the sale of said land by virtue of said order, and the purchase thereof in his own name, was not estopped to claim that the legal title to said premises had always been in him, and that J. J. Bentley's claim was only an equitable claim.

2.  The payment of $500 by Mrs. J. J. Bentley out of her separate estate, and the execution of a note by W. J. Bentley for $225 for the purchase price of the property, did not vest in Mrs. Bentley any title, nor create a trust in her favor in said two lots.    2 Warv. on Vend., p. 581, sec. 17;  Perry on Trusts, secs. 126, 127, 132.

*Ross & Chapman,* for defendants in error.—When a vendor in an executory contract, on default of payment of purchase money, elects to sue on the debt and to foreclose the lien, he thereby confirms the sale, and can not afterwards rescind.    Gunst v. Pelham, 74 Texas, 588;  Bartley v. Harris, 70 Texas, 181;  Roberts v. Lovejoy, 60 Texas, 253.

HEAD, ASSOCIATE JUSTICE.—On the 3rd day of August, 1874, B. C. Evans, in consideration of $500 cash and one note for $225, due six months after date, conveyed to J. J. Bentley, by warranty deed, in which the vendor's lien for the deferred payment was expressly reserved, lots 15 and 16, in block 108, of the city of Fort Worth.

J. J. Bentley, at the time of this conveyance, was, and ever since has been, a married woman, and the note for the deferred payment was signed by her husband, W. J. Bentley, alone.    The $500 cash payment was the separate property of the wife.

At the time of this purchase the Bentleys lived in the State of Louisiana, where they have ever since resided.    W. J. Bentley paid the taxes upon this property for one year after its purchase, after which they both seem to have paid no further attention to it, until about the time of the institution of this suit.

The lots declined in value a short time after this sale to such an extent that in 1878 they were not worth more than was then due upon the $225 note. In 1878 B. C. Evans instituted suit upon this note and obtained a judgment foreclosing the vendor's lien upon said lots, and at a sale thereunder became the purchaser thereof. In that suit W. J. Bentley alone was made defendant, and service was had by delivering to him a copy of the petition in the State of Louisiana.

After his purchase under this judgment, Evans, claiming to be the owner of the lots, regularly paid the taxes thereon, and exercised the usual acts of ownership over them, but no one seems to have been in actual possession. In 1884, the lots having greatly increased in value, were sold by Evans for $5500, which went into the community estate of himself and plaintiff in error, Ella Evans.

This suit was instituted, we infer, in January, 1891 (the date of the filing of the original petition not being given in the amendment upon which the case was tried), by the Bentleys, to recover the lots as the separate property of Mrs. B.; but failing in this, they prayed, in the alternative, for a judgment in her favor against Mrs. Evans, as survivor in community of herself and deceased husband, B. C. Evans, for the amount he had received at the sale in 1884.

The court below rendered judgment in favor of the purchasers under Evans, upon the ground that they had no notice of the separate property interest of Mrs. Bentley, but gave her judgment against Mrs. Evans for such portion of the $5500 received at the 1884 sale as the $500 cash payment bore to the original contract price ($725), which, with the interest thereon, amounted to the sum of $5237.75; and in this we think there was error.

It is clear that B. C. Evans did not waive or become divested of the superior legal title to the lots which he retained in the deed he made to Mrs. Bentley, by reason of his ineffectual attempt to foreclose the vendor's lien, in a suit to which she was not made a party. Ufford v. Wells, 52 Texas, 612; Foster v. Powers, 64 Texas, 247; Land and Cattle Co. v. Boon, 73 Texas, 548; Pierce v. Moreman, 84 Texas, 596.

It is also clear, that the vendee in an executory contract of this kind can waive or abandon his right to demand specific performance, even in cases where a part of the purchase price has been paid. Lanier v. Foust, 81 Texas, 186; Kennedy v. Embry, 72 Texas, 387; De Cordova v. Smith, 9 Texas, 129.

That such relief should be refused in cases involving long delay, during which changes in the value of the property have occurred, is emphasized in strong language in De Cordova v. Smith and Kennedy v. Embry, supra. In the case last cited, the facts were quite similar to those in the case at bar, and the following language was used: "If the vendee has actually abandoned the contract, or has so acted as to create the reasonable belief on the part of the vendor that he has abandoned it, the vendor may rescind without notice of his intention, notwithstanding the part performance by the vendee." In De Cordova v.

Smith, the property had greatly appreciated in value during the delay of the vendee, and under the circumstances of that case, it was held that specific performance should be refused him. Also see Fry on Spec. Perf., 3 ed., sec. 1070, et seq.; Pom. Con. (Spec. Perf.), sec. 407, 408.

The author last cited uses this language: "Where a vendee delays in completing the contract, in order that he may speculate upon the chances of its proving to be an advantageous bargain, or that through a rise in value or other change of circumstances his gain may be assured, and then when he is thus certain that it will be a fortunate speculation, offers to perform and sues to compel a conveyance by the vendor, a court of equity will refuse to grant him the remedy, even though he may have at an earlier day paid part of the purchase price. And a rise in the value of the land during the interval will always be a fact of much weight in tending to show that the vendee's delay was speculative, and for the very purpose of awaiting such a turn favorable to himself." A large number of cases, both English and American, are cited in the note to sustain the text.

That appellees would not be entitled to recover the money received by Evans at the resale, unless they could maintain a suit against him for specific performance, we think there can be no question. De Cordova v. Smith, supra.

In this case, the acts of the Bentleys were such as not only to create a reasonable belief on the part of Evans that they had abandoned their contract, but were such as to leave but little doubt that this was in fact their intention during the period of depression in the value of the lots, and that this intention was never changed until after the property had greatly enhanced in value, and the vendor had made a resale thereof.

It would be inequitable to allow the vendee in an executory contract of this kind to absent himself from the State for a series of years, so as to prevent the recovery of a personal judgment against him upon his contract, and also to allow him to neglect the payment of the taxes upon the land, thereby jeopardizing the security of the vendor, and then permit him, after a rescission by the latter, and after years of delay, to claim the benefit of the enhanced value of the property.

We believe, however, that where the vendee has paid a considerable portion of the purchase price which has not been repaid in the use of the property, the vendor upon a rescission should account for the amount he had received with interest. Thomas v. Beaton, 25 Texas Supp., 318; Coddington v. Wells, 59 Texas, 49. Plaintiff in error in her answer offered to do this.

We therefore conclude, that the proper judgment as to these parties to be rendered upon the findings and agreements is in favor of Mrs. J. J. Bentley for the $500 cash payment made by her, and in favor of W. J. Bentley for $813, interest on this amount from the date of such payment to this time, this judgment to be against Mrs. Ella Evans, as

representative of the community estate of herself and deceased husband.

The judgment of the court below will therefore, as between plaintiff in error and the Bentleys, be reversed, and judgment as above indicated here rendered, but in all other respects will be affirmed.

*Affirmed in part.*

*Reversed and rendered in part.*

Delivered December 5, 1894.

ON MOTION FOR REHEARING.

HEAD, Associate Justice.—It is contended that we erred in reforming the judgment of the court below, because the question as to whether or not Mrs. Bentley had abandoned her contract of purchase was neither passed upon in that court nor assigned as error in this court.

Waiving the question as to whether or not the seventeenth assignment of error, copied on page 54 of plaintiff in error's brief, is sufficient to present the issue in this court, we have concluded that the judgment rendered by us is as favorable to defendants in error as they were entitled to under the allegations of their petition; and they are therefore in no position to complain, even if it be conceded that the special verdict did not directly find the facts upon which our decision is made to rest.

From defendants in error's petition it will appear that their suit is one in equity to recover from their vendor the amount for which it is alleged he had sold their land, above what was due him from them thereon. It is alleged, that the original sale by Evans to the plaintiffs was made in August, 1874; that the purchase price was $725, of which $500 was paid in cash, and a note for $225, payable in six months, was executed for the remainder; that the vendor expressly reserved a lien in the deed to secure this deferred payment; that in 1878, this note being still unpaid, the vendor instituted suit thereon, and attempted to foreclose his lien, but failed to make the wife, in whose name the deed was made, a party to the suit; that this suit was prosecuted to judgment against the husband, and the lot was sold thereunder during that year (1878), and at this sale the original vendor became the purchaser; that in 1884 the vendor resold the land as his own (it in the meantime having greatly enhanced in value), for the sum of $5500; that in 1891 this suit was instituted by the vendee (who is not shown to have made any effort for fourteen years to pay the amount promised by her), to recover the balance of this $5500 and interest, after deducting the amount due on her note, basing her right upon the ground that she was not made a party with her husband in the foreclosure suit brought by the vendor.

We are of opinion that this petition does not make a case in equity which entitles the vendee to recover of the holder of the superior title

the enhanced value for which he had sold this lot, and doubt if it stated facts which entitled her to recover even her cash payment for which we gave her judgment with interest; and therefore, no matter what the verdict may have been, she should not have been given judgment for more than she was entitled to receive under her allegations.

Plaintiff in error does not complain of the judgment rendered by us, and we think defendants in error recovered all, if not more than they are entitled to; and while it might have been more regular for us to have remanded the cause, we see no good to be accomplished thereby, and as neither of the parties ask that this be done, the motion for rehearing will be refused.

*Refused.*

Delivered January 30, 1895.