**TENNISON et al. v. DONIGAN et al.**
(No. 275–3509.)

(Commission of Appeals of Texas, Section B.
Feb. 1, 1922.)

**1. Appeal and error ⊚⟶79(1)—Judgment held final as disposing of all parties.**

In a suit for specific performance of an option to lease, a judgment against plaintiffs generally for cancellation of the lease, removal of cloud on defendants' title, a writ of possession in favor of the defendants, finding that the lease instrument was without consideration, unilateral, and that no recovery could be had thereon, and awarding all costs against the plaintiffs generally, *held* to constitute a final judgment against all plaintiffs, though elsewhere judgment specifically named all but one plaintiff, and hence is appealable.

**2. Appeal and error ⊚⟶80(1)—Judgment in suit on lease option held to dispose of all issues.**

In a suit for specific performance of an agreement to lease, a judgment denying specific performance, but not awarding damages on the contract, canceled and held for naught, *held* to have disposed of all the issues, so that it is final and appealable.

**3. Judgment ⊚⟶194—Though entry may be irregular and imperfect, issues may be disposed of by necessary implication thus making the judgment final.**

Although a judgment may be irregular and imperfect in failing expressly to dispose of some issues, they may be disposed of by necessary implication, and the judgment made thereby final as to all issues and parties.

**4. Appeal and error ⊚⟶1114—Supreme Court may remand cause to Court of Civil Appeals to pass on issues.**

Where the Court of Civil Appeals had jurisdiction to pass upon assignments of error presented, but dismissed the case, the Supreme Court will remand it for determination of issues.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Mrs. N. N. Tennison and others against Dr. P. M. Donigan and others. Judgment for the defendants, and the plaintiffs appeal to the Court of Civil Appeals, which dismissed the case (220 S. W. 362), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and cause remanded to that court for further consideration.

M. T. Lively, of Dallas, Wm. Arch Jones, of Stephenville, and Adams & Stennis, of Dallas, for plaintiffs in error.

Chandler & Pannill, of Stephenville, for defendants in error.

POWELL, J. For an accurate statement of the nature of this case, we quote as follows from the application for writ of error filed herein by plaintiffs in error:

"This suit was instituted in the district court of Erath county by plaintiffs in error for specific performance of a certain option or agreement under which defendants in error obligated themselves to lease to plaintiffs in error certain lands in Erath county for oil and gas purposes. There was a trial before a jury on special issues, and, on motion of defendants in error, a judgment was entered by the trial court from which plaintiffs in error perfected their appeal to the honorable Court of Civil Appeals at Fort Worth, and the case was, by order of this court, transferred to the honorable Court of Civil Appeals at El Paso. This cause was submitted on briefs of both parties in the Court of Civil Appeals at El Paso, which court, after such submission, and without any notice to plaintiffs in error from any one, and without the point having been raised by defendants in error, dismissed this cause, holding that the judgment of the trial court from which plaintiffs in error had appealed is not a final judgment. The honorable Court of Civil Appeals holds that the judgment of the trial court makes no disposition of the plaintiff in error W. J. Frees, and that there was no final judgment in said trial court, and that the Court of Civil Appeals is without jurisdiction."

See (Civ. App.) 220 S. W. 362.

The judgment involved in this appeal is, in full, as follows:

"On the 10th day of February, 1919, came on to be heard the above styled and numbered cause and the parties appeared in person and by their respective attorneys announced ready for trial and thereupon came a jury of good and lawful men, to wit, Theo Williams and eleven others, who, after being duly impaneled and sworn and after hearing the pleadings, evidence, charge of the court, and argument of counsel, retired to consider their verdict, and thereafter, on the 12th day of February, 1919, returned into open court their answers to the special issues submitted to the jury as follows:

" 'Special Issue No. 1. Did the plaintiff W. J. Frees, in order to induce the defendants to execute the option or written instrument made the basis of this suit, represent to the defendants in substance that he represented some New York capitalists who had $2,000,000 which they would use in developing defendants' lands in Erath county, Tex., for oil, and that the said New York capitalists had all necessary casing and tools that would be needed in developing said lands for oil? Answer Yes or No. Answer: Yes.

" 'Special Issue No. 2. If special issue No. 1 is answered in the affirmative, then were the representations, if any, made by the said Frees to the defendant, set out in special issue No. 1, true or false? Answer True or False just as you find. Answer: False.

" 'Special Issue No. 3. Were the defendants induced by the representations made by the plaintiff Frees to them, if such representations were made, set out in special issue No. 1, to execute and deliver the option or written agreement attached to plaintiff's original petition? Answer Yes or No. Answer: Yes.

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

" 'Special Issue No. 4. Did the plaintiff Frees, to induce the defendants to sign the written instrument or option which is the basis of this suit, represent to them that Mrs. N. N. Tennison had no interest in the proposed development of said land, and that the parties represented by said Frees were other and different from ·Mrs. Tennison and were New York capitalists experienced in the oil business who had the money and materials necessary to develop said lands? Answer Yes or No. Answer: Yes.

" 'Special Issue No. 5. If special issue No. 4 is answered in the affirmative by you, then were the representations made by ·the plaintiff Frees to the defendants, if any were made, set ·out in special issue No. 4, true or false? Answer True or False, just as you find. Answer: False.

" 'Special Issue No. 6. Were the defendants induced by the representations made by the plaintiff Frees to them set out in special issue No. 4, if any such were made by said Frees to execute and deliver the instrument of writing or option which is attached to plaintiffs' original petition and which forms the basis of this suit? Answer Yes or No. Answer: Yes.

" 'Special Issue No. 7. Did the plaintiff Frees represent to the defendants, in order to induce them to sign the written option or instrument of writing which is attached to plaintiff's original petition and is the basis of this suit, that Mrs. Tennison and Dr. Osigan in substance would not have any interest in any lease to be executed by the defendants under the terms of said option? Answer Yes or No. Answer: Yes.

" 'Special Issue No. 8. If special issue No. 7 is answered in the affirmative, then were the representations made by the said Frees to the defendants and set out in said special issue No. 7 true or false? Answer True or False. Answer: False.

" 'Special Issue No. 8a. At the time of the execution of the option in question, was it or not the intention of said Frees to associate with himself in the lease to be executed under said option by the defendants the said Mrs. Tennison and the said Dr. Osigan? Answer Yes or No. Answer: Yes.

" 'Special Issue No. 9. Was it or not the intention of the plaintiff Frees at the time he procured the execution and delivery of the option in evidence to associate with himself New York capitalists to enter into the lease contract contemplated by said option? Answer Yes or No. Answer: No.

" 'Special Issue No. 10. What was the reasonable market value per acre for lease purposes for oil and minerals on the land in question on the 29th day of August, A. D. 1918? Answer: $35 per acre.

" 'Special Issue No. 11. What was the reasonable market value of the land in question for mineral lease purposes only on or about October 15, 1918? Answer: $35 per acre.

" 'Special Issue No. 12. What is the reasonable market value of the land in controversy for lease purposes for oil and minerals at this time? Answer: $7,000.

" 'Issue No. A. What was the reasonable market value of the lease offered by defendants under their option agreement of date August 29, 1918, on the entire 200 acres of land in controversy, on the 17th day of October, 1918? Answer: $7,000.

" 'Issue No. B. What was the reasonable market value of the lease offered by defendants under their option agreement of date August 29, 1918, on the entire 200 acres of land in controversy, on the 11th day of February, 1919? Answer: $30,000.'

"And it appearing to the court that the said instrument sued on by the plaintiffs and attached to plaintiffs' petition is too vague, indefinite, and uncertain to be made the basis of any suit, and that the same on account of its said vagueness and uncertainty does not bind the defendant's and it further appearing to the court that said instrument, a copy of which is attached to plaintiffs' said petition, is wholly without consideration and unilateral, and that no recovery can be had thereon:

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs Mrs. N. N. Tennison, J. B. Cranfill, and V. K. Osigan take nothing by their said suit against the defendants P. M. Donigan and Rebecca Donigan, and that said defendants P. M. Donigan and Rebecca Donigan as to the said suit of plaintiffs go hence without day and recover their costs. Said premises of the defendants are described as follows: 'All that certain tract and parcel of land situated in Erath county, Tex., and being 180.9 acres of the William Ashworth survey, more or less, and 90 acres of the George Everett survey, more or less, and described as follows: Beg. at a stake in center of Flat creek for the N. W. cor. of this and also on the north boundary line of the said William Ashworth survey; thence with the N. boundary line of same S. 71° E. 845 varas to a rock, the S. W. cor. of Geo. Everett survey; thence with the W. line of said N. 19° E. 418 varas to rock, S. W. cor. ten-acre tract; thence with E. line of said QTP varas to rock in N. B. L. of 100-acre survey; thence with line of same S. 71° E. 765 varas to rock, N. E. corner of same; thence S. 1° W. 528 varas to rock, S. E. corner of 100-acre tract on N. line Wm. Ashworth survey; thence 71° E. 422⅔ varas with the N. B. L. of Wm. Ashworth survey to rock and N. E. corner of this survey; thence S. 1° 30′ W. 309½ varas to rock; thence 85½° S. W. 534 varas to rock; thence N. 71° W. 125½ varas to rock on W. side of road; thence along said road N. 27° W. 172½ varas W. 175 varas N. 79° W. 357 varas to stake and mesquite; thence N. 41° W. 42.8 to center of creek; thence up the creek with its meanders to place of beginning'—and that as to the above-described premises that said instrument, a copy of which is attached to the plaintiffs' petition and which is of record in the office of the county clerk of said county in volume 144, page 170, be, and the same is hereby, removed and canceled as a cloud on the defendants' title to said premises, and that for said premises defendants have as against the plaintiffs their writ of possession, and that the defendants recover of the plaintiffs all costs in this behalf expended, for all of which let execution issue. It is further ordered that the officers of this court have their execution against the parties respectively for the costs incurred by each, and it is so ordered, to which judgment the plaintiffs in open court excepted."

The Court of Civil Appeals announces the familiar rule that a final judgment must dispose of all the parties and issues, and then proceeds to declare that aforesaid judgment fails to meet those tests in that it does not dispose of the plaintiff W. J. Frees, the principal actor and plaintiff in the court below. The controlling question before us is whether or not the Court of Civil Appeals erred in this ruling. We think it did, for we are of the view that the judgment of the district court was a final one, and that the Court of Civil Appeals has jurisdiction of this appeal.

[1] The judgment itself, on its face, in several places, mentions the name of W. J. Frees as one of the plaintiffs. Near the end of the judgment the court decreed as against the plaintiffs generally, a cancellation of the written lease sued upon, and the removal thereof as a cloud upon defendants' title; also as against the plaintiffs generally, a writ of possession in favor of the defendants was ordered. The court, in another portion of the decree, found that the instrument sued upon, the record of which in the county clerk's office. is specifically set up in the judgment, was without consideration, unilateral, and no recovery could be had thereon. The court concluded by awarding defendants judgment for all costs against the plaintiffs generally. We think these portions of the judgment as to W. J. Frees constituted a final judgment against him. See Graves v. Campbell, 74 Tex. 576, 12 S. W. 238; Moore v. Powers, 16 Tex. Civ. App. 436, 41 S. W. 707.

[2] The portions of the judgment above referred to not only dispose of Frees, but they dispose of all the issues. No specific performance could be decreed, nor damages awarded, on a contract canceled by the court and held for naught; in other words, as we view it, so far as Frees was concerned, the aforesaid portions of the judgment were just as binding and conclusive in disposing of all the issues in this case as would have been true had the name of W. J. Frees been included in that portion of the judgment which reads as follows:

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs, Mrs. N. N. Tennison, J. B. Cranfill, and V. K. Osigan, take nothing by their suit against the defendants," etc.

The defendants had prayed for a cancellation of the instrument in suit and its removal as a cloud upon their title. When the court awarded such a decree it necessarily, by implication, carried with it a refusal of the prayer by the plaintiffs for specific performance of that same instrument, or damages because of the failure to execute it. The two portions of the judgment mean the same thing in practical results. In fact, we think one portion of the judgment would be largely a repetition of the other; that is to say, where a judgment expressly decrees in favor of defendants a cancellation of an instrument which is the foundation of plaintiffs' suit, the action of the plaintiffs for specific performance of same is by necessary implication denied.

[3] It is the well-settled law of this state that, though a judgment entry may be irregular and imperfect in failing to expressly dispose of some issues between the parties, such issues may be disposed of. by necessary implication, and the judgment made thereby final as to all issues and all parties. See Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161.

[4] In the case just cited, the Court of Civil Appeals held that the judgment involved therein was not final, because it failed to expressly dispose of the appellant's cross-action. Our Supreme Court differed with that court, and held the. judgment to be a final one. In discussing the law point involved, our Supreme Court used this language:

"Upon that issue there have long been in this state two well-defined and sharply conflicting lines of decisions by Courts of Civil Appeals. Such conflict arises, principally, it seems, upon the construction given to article 1994, Revised Statutes 1911, relating to the form of judgments of district and county courts; those Courts. of Civil Appeals who adhere to a strict rule of construction in the premises holding that a judgment which does not, in express terms, specifically dispose of a cross-action or counterclaim is not a final judgment, such as will support an appeal, and those who adhere to a more liberal rule of construction holding that a judgment may be final even though it disposes of such cross-action or counterclaim by necessary implication only, without expressly mentioning it."

The court then proceeded to review the decisions of the various Courts of Civil Appeals and ended by adopting the more liberal rule of construction aforesaid. Not only did it do that, but it .reviewed former decisions of the Supreme Court itself. We call particular attention to the following: Rackley v. Fowlkes, 89 Tex. 613, 36 S. W. 77; Davies v. Thomson, 92 Tex. 391, 49 S. W. 215.

The case of Trammell v. Rosen, supra, has been cited with approval many, many times, as shown by Shepard's Texas citations. So far as we have been able to ascertain, it has never been modified, or overruled. It seems so manifestly correct that we can well understand why this is true. For other cases sustaining our view that the judgment in issue is a final one, we refer to the following: Crain v. National Life Ins. Co., 56 Tex. Civ. App. 406, 120 S. W. 1098 (writ of error denied in 104 Tex. 684, 123 S. W. xx); Trinity County Lumber Co. v. Conner (Civ. App.) 187 S. W. 1022; Pitt v. Gilbert (Civ. App.) 190 S. W. 1157; Bowles v. Belt (Civ. App.) 159 S. W. 885 (writ of error denied in 161 S. W. xvi); Ex parte Fuller, 58 Tex. Civ. App. 217, 123 S. W. 204 (writ of error denied in 104 Tex. 689,

123 S. W. 204); Staacke Bros. v. Walker (Civ. App.) 73 S. W. 408; Dillard v. Allison (Civ. App.) 40 S. W. 1023.

In the Court of Civil Appeals appellants filed a brief containing 40 assignments of error. We think that court had jurisdiction of this appeal, and that it should now assume the same and pass upon the assignments of error presented.

We believe the cause should be remanded to that court for reinstatement and consideration upon its merits. See Bomar v. West, 87 Tex. 299, 28 S. W. 519; Frank v. Tatum. 87 Tex. 204, 25 S. W. 409; Trammell v. Rosen, supra; and McKenzie v. Withers, 109 Tex. 255, 206 S. W. 503.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the cause remanded to that court for further consideration, as aforesaid.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.